IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 6, 2024

### STATE OF TENNESSEE v. KHALIL YOUNG

**Appeal from the Criminal Court for Shelby County
Nos. C2300396, C2300551, W2300114, 23-00323     Chris Craft, Judge**

_____

### No. W2023-01139-CCA-R3-CD

_____

The defendant, Khalil Young, pleaded guilty to attempted carjacking and kidnapping, and the trial court imposed an effective sentence of eight years' incarceration in the Tennessee Department of Correction. On appeal, the defendant argues the trial court erred in denying his request for diversion and alternative sentencing. After reviewing the record and considering the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and KYLE A. HIXSON, JJ., joined.

Phyllis Aluko, District Public Defender, Barry W. Kuhn (on appeal), and Javier Bailey (at guilty plea hearing), Assistant District Public Defenders, for the appellant, Khalil Young.

Jonathan Skrmetti, Attorney General and Reporter; Christian N. Clase, Assistant Attorney General; Steve Mulroy, District Attorney General; and Paul Lichlyter, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Facts and Procedural History*

## I.     Guilty Plea

On August 1, 2023, the defendant pleaded guilty to one count of attempted carjacking (count one) and one count of kidnapping (count three).[1] Pursuant to the plea agreement, the defendant agreed to a six-year sentence as a Range I offender for count one to be served concurrently with an eight-year sentence as a Range II offender for count three, with the manner of service to be determined by the trial court.[2] The facts underlying the plea, as explained by the State, were as follows:

> [On] August 26, 2022, Coleman Garrett reported that he was driving his 2012 Mercedes Benz with two females – two males and one female inside. Garrett reported that he pulled into a parking lot near Macon and Sycamore View and began arguing with one of the females. Garrett reported that during the argument one male grabbed a handgun from the female and pointed it at Garrett. The armed male got into the driver's seat while the second male got into the passenger's seat and they fled the scene.

> On August 31, 2022, MPD responded to a disturbance at 590 Washington Avenue. Officers detained [the defendant] as a party involved in the disturbance with Diamond Wright. Officers contacted Diamond Wright during the call who directed officers to where Garrett's Mercedes was parked. [The defendant] was in possession of a Mercedes Benz key.

> While dealing with the disturbance, other officers located Garrett's Mercedes at 245 Winchester. Officers verified the key [the defendant] was in possession of was in fact the key to Mr. Garrett's Mercedes.

> [The defendant] waived his Miranda rights, gave a statement admitting his involvement in the carjacking of Mr. Coleman Garrett. Mr. Garrett came to violent crimes, identified Mr. Wright out of the six-person photo line-up.

> . . . .

> On Wednesday, December 28, 2022, MPD responded to a criminal assault at the Regional One hospital located at 877 Jefferson, Victim R.E.

---

[1] The defendant was also charged with one count of employing a firearm during the commission of a dangerous felony (count two), but that count was dismissed as part of the plea agreement.

[2] The defendant agreed to an out-of-range sentence for count three pursuant to *Hicks v. State*, 945 S.W.2d 706, 709 (Tenn. 1997).

stated that she and her boyfriend [the defendant] along with three other female friends traveled to Memphis to hang out on Tuesday, December 27th.[3]

[The victim] stated that while they were inside a club in the downtown area, she and [the defendant] got into a verbal argument. [The victim] stated that [the defendant] was asked to leave the club and he forced her to leave with him. She stated everyone left the club and entered her Toyota Camry driven by [the defendant].

[The victim] stated that they drove to a nearby gas station, that [the defendant] became irate with her friends. She stated that – she stated as her friends went into the gas station, [the defendant] pointed an AR-style weapon at them and followed them into the store.

[The victim] stated that the clerk – the store clerk intervened and allowed them to take cover inside of a room inside the store. She stated that [the defendant] dragged her out of the room at gunpoint, forced her to walk to a nearby apartment complex. [The victim] stated that [the defendant] fired a shot in the air from the AR-style weapon as they walked.

[The victim] stated that [the defendant] choked her, slapped her in the face several times. She stated that [the defendant] pointed the gun at her and told her you have five seconds to run or I'm going to shoot you. [The victim] stated that she began to cry and did not run. She stated [the defendant] told her I hope you know you're about to give me some p***y and stated [the defendant] forced her to remove her clothes before he forced penile vaginal sex without a condom inside the stairway of the apartments.

[The victim] stated [the defendant] later met with one of the friends who allowed them to stay inside of his hotel room. [The victim] stated she attempted to leave when [the defendant] fell asleep. She stated that [the defendant] was awakened by his friend and [the defendant] would not allow her to leave. [The victim] stated on Wednesday, December 28th at approximately 1200 hours, [the defendant] rented room 227 at the Skyline Inn located at 1900 block of Shelby Drive.

Stated once inside the room, [the defendant] pointed a black handgun at her and made her – [make] face calls to her mother pretending she is okay.

---

[3] It is the policy of this Court to refer to victims of sexual abuse by their initials. However, we note, the defendant was not charged with any sexual crimes against R.E. in this case.

She stated [the defendant] then forced her to have penile vaginal sex again. [The victim] stated she convinced [the defendant] to take her to the hospital in her Toyota Camry. [The victim] sustained injuries to both sides of her neck. While at the hospital Memphis police were called. [The defendant] was taken into custody at Regional One. [The victim] signed a consent to search her vehicle and officers recovered a black 9 millimeter Taurus handgun.

A search warrant was executed at Skyline Inn in room 227. A Mossberg AR-style 22 was recovered along with the victim's purse and phone.

During the investigation, [the victim] identified [the defendant] from a single shot photo as her boyfriend and the person responsible for kidnapping and raping her at gunpoint. [The defendant] was advised of his Miranda rights, at which he invoked his rights and refused to give a statement.

This offense occurred in Memphis, Shelby County, Tennessee.[4]

## II. Sentencing Hearing

During the sentencing hearing, the State introduced a copy of the defendant's presentence report. The victim testified that she did not believe the defendant should receive probation in this case. She stated that she suffered from anxiety as a result of the incident and wondered what would have happened to her if she had not convinced the defendant to take her to the hospital that night. The victim also testified that, following the incident, she was harassed on social media.

In denying diversion, the trial court articulated its reasoning, as follows:

First thing I'll consider is diversion. *State v. Parker* is of course the diversion considerations, 932 S.W.2d at page 958. So I have considered his amenability to correction, whether or not he will conform himself to the requirements of the law.

---

[4] Following the State's recitation of the facts, trial counsel informed the court that the defendant did not "stipulate to the allegations of rape. Any handgun firing or pointing, we don't stipulate to those facts. But we will stipulate to the facts that allege the kidnapping [and attempted carjacking] charge[s] that [are] before the [c]ourt."

- 4 -

The circumstances of the offenses are somewhat egregious but not very bad. His criminal record, he does not have much of a criminal record, just a resisting arrest and another thing but there's really not much of a disposition for that in Mississippi.

His social history is not that good. He basically from 18 to age 22 before he went to jail, he went to jail December 28, 2022. During those four years he basically was working different part-time jobs and ten days before he committed the kidnapping he left his job. He was discharged and had no job. Yet, for some reason he was out clubbing with the victim in the kidnapping. But it doesn't show during those four years that he was working solid at a full-time job. He also had – was smoking marijuana during that time.

The status is accused – and mental health. I'm gonna consider his bipolar nature in Exhibit A they talked about his mental health.

The deterrence value to the accused as well as others, I don't think that it would have a deterrent – putting him on diversion or not putting him on diversion wouldn't have much of a deterrent value to other people. I think it might have some deterrent value as to him but not as to others. This wasn't crimes that were in the newspaper or public knowledge. He wasn't a gang member that had all his friends that need to be taught a lesson to so that wouldn't be a consideration.

[Section] G, whether judicial diversion would serve the interest of the public as well as the accused. He has committed two violent crimes. No question he's committed these crimes. This wasn't an *Alford* plea. Some months apart. In other words, he committed one violent crime and before he was charged [in] that one, he committed another violent crime at a time when he was unemployed and smoking marijuana.

And I find that this basically sustained intent to violate the law. He had – I find that under these circumstances it would not be in the interest of the public at all for him not to have two felonies on his record. I would want him never ever to have a handgun again. And for everyone that hired him or knows him to be able to find out that he kidnapped a girl and carjacked a car at different times. So I don't find that diversion is applicable at all.

Also, I can also according to another case under *State v. Washington* 866 at page 951, his attitude, his behavior since his arrest. Of course when

he was arrested then he's been in jail ever since then. His home environment, current drug usage which I'm going to consider. His past employment has not been good, his general reputation and I'm looking at his Strong-R report in the probation report Exhibit A that he is moderate to re-offend. They score him as moderate because of his issues with the factors that have been mentioned in the report.

And so I've weighed all that and there's just not any way I think that we can get him in a situation where we can defer these sentences and wipe them off his record. I think he's a person who needs to have this on his record for the rest of his life.

Next, in considering and denying the defendant's request for probation, the trial court noted,

Looking at probation considerations under the statute, the presentence report which I have gone through, taken a break to do that. Again, under the probation considerations, they're somewhat the same as the diversion considerations. His physical and mental condition and his social history, his mental condition, although having this mental condition at some point when he was younger, it's not affecting his ability to get a job or work or appreciate the seriousness of what he did. And his social history again from somebody that graduated from school and just doesn't really focus in his life, having part-time jobs which the presentence report says he can't even remember the names of them and the only proof we have of these jobs is his word that he did work those part-time jobs except for one job where he worked four months for a tire company.

So he has a poor social history, even though he's only 23 years old. That doesn't give him time to have a long history but from 18 to 22 doesn't speak well of him.

I've also considered the facts and circumstances surrounding each offense and the nature and circumstances of the criminal conduct involved and I understand why the State did not prosecute the sex offense because of the facts that the victim testified to are somewhat equivocal as far as when they have sex, when they don't have sex and whether or not it's by consent or willing.

His prior criminal history. He does have a prior criminal history but it's not a significant one, other than considering when he commits his

kidnapping that he's already committed a carjacking that was part of his history.

His previous actions and character, we don't know anything good that he's done with his life basically. Whether or not the defendant might reasonably be expected to be rehabilitated and his potential for – or lack of potential of rehabilitation is another statutory consideration, including the risk that during the period of probation he will commit another crime. And I find from the facts of these offenses that were stipulated to, not everything that the State said but the things that were stipulated to, I think that there's a great risk that during his period of probation if he's placed on probation he will commit another crime. He will smoke marijuana, he'll get a gun. I think the facts are high.

Whether or not it appears the defendant will abide by the terms of the probation, I think not. I have doubts about that, serious doubts. Whether or not the interest[s] of society [are] protected from possible future criminal conduct of the defendant are great. I think they are because these are two violent offenses, allegedly with guns but they were plea-bargained down to carjacking which only requires force and kidnapping which does not require a weapon.

I also have to consider whether or not measures less restrictive than confinement have frequently or recently been applied unsuccessfully, not really(,) he's never been placed on probation before so they haven't been used before on him so that's – I don't find that factor to be of consequence.

And whether or not a sentence of full probation would unduly depreciate the seriousness of the offense. I think it's true. We have – and I'll take judicial notice of our court dockets in Shelby County. The number one crime right now in Shelby County other than murder is carjacking. It's getting to where people are afraid to drive down the street. And carjacking is a very, very serious crime that needs to be deterred. I don't know that this is going to make the news or anything so it won't be a deterrent to others but carjacking is something we do not want to depreciate in seriousness.

And then the last statutory factor was whether the offense was particularly enormous, gross, or heinous and they were not. Neither one of these cases were gross or heinous or enormous. But it's very significant to me, very significant that he committed both of these crimes, one after the

other one, which shows a sustained intent in my mind for him to commit crimes and not care.

So(,) for that reason, I find that he is not deserving of probation and so I will deny that sentence of probation at this time and also diversion.

*Analysis*

On appeal, the defendant argues the trial court erred in denying judicial diversion and probation. The State contends the trial court acted within its discretion when it sentenced the defendant to confinement. Following our review, we agree with the State.

## I.      Denial of Diversion

The defendant argues the trial court erred in denying judicial diversion. Although the defendant qualified for judicial diversion, the defendant submits the trial court failed to "fully consider the judicial diversion criteria and disregarded the information presented." The State contends the trial court acted within its discretion when it denied the defendant judicial diversion. Upon our review, we affirm the decision of the trial court.

A defendant is eligible for judicial diversion if he is found guilty or pleads guilty to a Class C, D, or E felony, has not been previously convicted of a felony or a Class A misdemeanor, has not been previously granted judicial or pretrial diversion, and is not seeking deferral for certain sexual offenses. *See* Tenn. Code Ann. § 40-35-313(a)(1)(B)(i). "Eligibility under the statute does not, however, constitute entitlement to judicial diversion; instead, the decision of whether to grant or deny judicial diversion is entrusted to the discretion of the trial court." *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014). The trial court must consider several common law factors:

(a) The accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice – the interests of the public as well as the accused.

*Id.* at 326 (quoting *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)). "[T]he trial court must weigh the factors against each other and place an explanation of its ruling on the record." *Id.* (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

- 8 -

When the trial court considers the common law factors, "specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," then this Court will "apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id.* at 327. Our supreme court previously explained:

> Although the trial court is not required to recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

*Id.*

Here, the trial court properly weighed the required factors. The trial court concluded the defendant's social history, the deterrence value to the defendant, the interests of the public, and the circumstances of the offenses weighed against diversion. The trial court found that the defendant's commission of two violent crimes "some months apart" showed a "sustained intent to violate the law"; that the circumstances of the offenses were "somewhat egregious but not very bad"; that the defendant's social history was "not that good" because he had a history of drug use and sporadic part-time employment; that granting diversion would have "some deterrent value as to [the defendant] but not as to others; and that "it would not be in the interest of the public at all for [the defendant] not to have two felonies on his record."

We read the trial court's findings regarding the defendant's criminal history and physical and mental health as determining that these factors were neutral. The trial court found that the defendant "does not have much of a criminal record" and that it was going to "consider [the defendant's] bipolar nature." Although the trial court mentioned the amenability to correction factor, it did not make any findings regarding this factor.

While the defendant requests that we reevaluate the trial court's determinations regarding each factor, because the trial court adhered to the requirements of *Parker* and *Electroplating*, our review is limited to determining whether "any substantial evidence" exists in the record to support the trial court's decision. *King*, 432 S.W.3d at 326. We conclude that the record supports the trial court's decision, and accordingly, the trial court did not abuse its discretion in denying judicial diversion. The defendant is not entitled to relief on this issue.

## II.     Denial of Probation

The defendant also argues the trial court erred in denying probation.  Specifically, the defendant argues the trial court failed to consider all relevant facts and circumstances when making its determination.   The State contends the trial court acted within its discretion in ordering the defendant to serve his sentence in confinement.  We agree with the State.

A trial court's decision to grant or deny probation is reviewed under an abuse of discretion standard with a presumption of reasonableness when the sentence reflects the purposes and principles of sentencing.  *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).  "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination."  *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (order) (per curiam).  The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'"  *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* Tenn. Code Ann. § 40-35-303(b); *State v. Russell*, 773 S.W.2d 913, 915 (Tenn. 1989); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

Generally, probation is available to a defendant sentenced to ten years or less.  Tenn. Code Ann. § 40-35-303(a).  A defendant who is convicted as an especially mitigated or standard offender of a Class C, D, or E felony is considered a favorable candidate for probation.  Tenn. Code Ann. § 40-35-102(6)(A).  In determining whether incarceration is appropriate, the trial court should consider whether:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A)-(C).  Additionally, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and "[t]he potential or lack of potential for the rehabilitation or treatment of the

defendant should be considered in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(4), (5).

In denying probation, the trial court specifically found that the defendant "has a poor social history, even though he's only 23 years old"; that if probation was granted there was a "great risk" that the defendant would commit another crime such as smoking marijuana or obtaining a weapon; that the interests of society should be protected "because these are two violent offenses"; and that full probation would unduly depreciate the seriousness of the offenses, noting that "[t]he number one crime right now in Shelby County other than murder is carjacking." The trial court properly considered the statutory criteria as well as other facts and circumstances supported by the record. Additionally, the trial court's determination is consistent with the purposes and principles of sentencing. Therefore, the trial court was within its discretion in imposing a sentence of confinement. The defendant is not entitled to relief on this issue.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE